UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00420-FDW-DSC

| | |
|---|---|
| BEAM CONSTRUCTION COMPANY, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALLIED WORLD SPECIALTY )<br>INSURANCE, INC. and MRL PLUMBING, )<br>INC., )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant Allied World Specialty Insurance, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure (Doc. No. 16). For the reasons stated herein, the Court GRANTS the Motion to Dismiss.

## I. PROCEDURAL BACKGROUND

Plaintiff Beam Construction Company, Inc. ("Plaintiff") commenced this action against Defendants Allied World Specialty Insurance, Inc. ("Allied") and MRL Plumbing, Inc. ("MRL") on June 13, 2017 in Superior Court in Gaston County, North Carolina. Allied removed the action to this Court on July 17, 2017. Plaintiff subsequently filed an amended complaint on September 6, 2017, and Allied filed this Motion on September 20, 2017. Allied moves to dismiss claims III, IV, and V of Plaintiff's amended complaint for failure to state a claim upon which relief may be granted. Claims III and IV seek relief for fraud, and claim V seeks relief for unfair or deceptive trade practices. The Motion is now fully briefed and ripe for resolution.

## II. FACTUAL BACKGROUND

This case arises out of Defendant MRL's failure to perform its contractual obligations as a subcontractor to Plaintiff.[1] After MRL contracted with Plaintiff to provide plumbing work, MRL, as principal, entered into a contract with Allied, as its surety, for a subcontract performance bond. (Doc. No. 15 at 2; Doc. No. 15-1 at 2). The performance bond held Allied, as surety, bound to Plaintiff, as obligee, in the amount of $1,282,000.00. (Doc. No. 15 at 2; Doc. No. 15-1 at 2). The Performance Bond stated:

> Whenever the principal shall be, and is declared by the Obligee to be in default under the Subcontract, with the Obligee having performed its obligations in the Subcontract, the Surety after receipt of written notice of the default from the Obligee may remedy the default within fifteen (15) calendar days, or shall promptly:
> . . . Complete the subcontract in accordance with its terms and conditions; or
> . . . Obtain a bid or bids . . . for completing the Subcontract in accordance with its terms and conditions. . . or
> . . . Determine the total amount for which it is liable to the Obligee . . . and pay that amount as soon as practicable

(Doc. 15-1 at 2-3).

Plaintiff subsequently declared MRL in default and then, terminated its contract with MRL. (Doc. No. 15 at 3). Plaintiff alleges Allied has not fulfilled its contractual obligation as surety under the performance bond. (Doc. No. 15 at 3-4). Allied has only paid Plaintiff $150,000 when Plaintiff has submitted claims exceeding this amount. (Doc. No. 15 at 3-4). Plaintiff also alleges Allied committed fraud by telling Plaintiff that it should complete MRL's work and by hiring a consultant to assess Plaintiff's claims without honoring, or intending to honor, the consultant's determinations. (Doc. No. 15 at 9-12). Plaintiff further alleges Allied's failure to pay the valid

---

[1] The background is based on allegations in Plaintiff's amended complaint (Doc. No. 15). All factual allegations are taken in the light most favorable to Plaintiff. See e.g., Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

claims, along with Allied's other conduct, constitutes an unfair or deceptive trade practice. (Doc. No. 15 at 13-14).

### III. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"—"not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). The court accepts all well-pleaded allegations in the complaint as true and draws all reasonable factual inferences from those facts in the plaintiff's favor. Id. at 244 (citations omitted); Mylan Labs, 7 F.3d at 1134. Well-pleaded allegations "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be plausible, the factual matter must "allow[] the court to draw the reasonable inference that the defendant is liable." Id. (citing Bell Atl. Corp., 550 U.S. at 556).

Claims of fraud, however, must also "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The purposes of Rule 9(b) include "providing notice to a defendant of its alleged misconduct, of preventing frivolous suits, of eliminating fraud actions in which all the facts are learned after discovery, and of protecting defendants from harm to their goodwill and reputation[.]" United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013) (citations omitted) (internal quotation marks omitted). To satisfy the particularity requirement, the complaint must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

obtained thereby." Takeda Pharms., 707 F.3d at 455–56 (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).

## IV. ANALYSIS

### a. Fraud

Although there is no "precise formula" or "any certain language" that must be used to plead a claim of fraud, Carver v. Roberts, 78 N.C. App. 511, 513, 337 S.E.2d 126, 128 (1985), the complaint must allege facts that if proven would support a charge of fraud "upon a liberal construction of the whole pleading," Piles v. Allstate Ins. Co., 187 N.C. App. 399, 406, 653 S.E.2d 181, 186 (2007) (quoting Carver, 78 N.C. App. at 513, 337 S.E.2d at 128). The particularity requirements under Rule 9(b) of the Federal Rules of Civil Procedure does not absolve the plaintiff of its burden to plead facts that if accepted as true "state a claim to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570 (2007); see Ashcroft, 556 U.S. at 684 (holding plausibility requirement applies to all civil actions).

While its acknowledged that "fraud has no all[-]embracing definition . . . , the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (citations omitted). For a representation to be actionable as fraud, it must be a misrepresentation of "[a] subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects[.]" Id. at 139, 209 S.E.2d at 500 (citations omitted). Concealment of a material fact relating to a transaction is also actionable if

4

there was a duty to disclose. Hardin v. KCS Int'l, Inc., 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting Harton v. Harton, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)).

Allied argues that both of Plaintiff's claims for fraud fail to allege a false representation.[2] The Court agrees. For Plaintiff's third claim for relief, the only representation alleged to have been made by an representative of Allied is: "[Plaintiff] should complete the work left undone by MRL's default." (Doc. No. 15 at 9). Not only has Plaintiff not alleged that this statement is false, but the statement expresses a matter of opinion: "[Plaintiff] *should* complete the work[.]" (Doc. No. 15 at 9). No fact is being represented by this statement—true or false. Accepting as true Plaintiff's other allegations including that Allied stated this "knowing that it was not properly collateralized" and "knowing that Allied would likely delay and fail to make timely and complete payments" does not make the statement a representation of "a subsisting or ascertainable fact." Instead, it is an opinion, which is insufficient to support a claim of fraud.

Plaintiff's fourth claim for relief is similarly deficient. The amended complaint alleges that James Keating of Allied represented to Plaintiff that Allied decided to retain a consultant to assess Plaintiff's claim. (Doc. No. 15 at 12). This is an ascertainable fact, but the amended complaint does not allege that the statement was false. Instead, Plaintiff admits in its allegations that a consultant was obtained and the consultant made recommendations to Allied. (Doc. No. 15 at 12). Plaintiff alleges "Allied knew that [Plaintiff] . . . was relying upon Allied to give appropriate and timely consideration to the recommendations made by Allied's consultant" but Allied declined to

---

[2] In its response, Plaintiff requested "that the court allow it to file a second amended complaint for the limited purpose of inserting the formulaic elements of a traditional fraud cause of action within the existing language of the amended complaint[.]" (Doc. No. 20 at 9). Motions made outside of a hearing or trial should be made in writing, supported by a brief, and reflect consultation with the opposing parties. LCvR 7.1. Because Plaintiff's request did not comply with these requirements and Plaintiff had previously been granted an opportunity to amend its complaint, the Court declines to consider Plaintiff's motion to amend until properly brought before the Court.

pay Plaintiff the uncontested amount identified by the consultant of $96,298. (Doc. No. 15 at 12). Plaintiff also alleges upon information and belief that "Allied had no intention of promptly paying Plaintiff for any damages its consultant identified as due and owing . . . ." (Doc. No. 15 at 12). This alleged knowledge taken as true does not make Allied's statement that it was obtaining a consultant a false representation. Thus, the facts alleged in the amended complaint, taken as true and viewed in the light most favorable to Plaintiff, do not state a plausible claim of fraud under the third or fourth claim for relief. Accordingly, the Court dismisses Plaintiff's third and fourth claim for relief of fraud without prejudice.[3]

**b. Unfair or Deceptive Trade Practices**

The three elements for a claim of unfair or deceptive trade practices under section 75-1.1 of the North Carolina General Statutes are "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)). A practice or act is deceptive if it has "the tendency or capacity to mislead" and unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citations omitted). The determination that a trade practice is unfair or deceptive is a question of law for the court. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).

---

[3] Plaintiff has neither plead Allied had a duty to disclose nor plead facts to support that a duty to disclose exists. Hardin, 199 N.C. App. at 696, 682 S.E.2d at 733. Therefore, Plaintiff has not plead a cause of action of fraud for concealment of a material fact.

North Carolina courts have recognized that contractual disputes are generally outside the scope of an unfair or deceptive trade practices claim. See e.g., Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) ("[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract."). This recognition reflects that "'[p]arties contract partly to minimize their future risk' [and] [o]pening the door to trebling, punitive damages, and other tort remedies would upset those expectations." Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (quoting Strum v. Exxon Co., USA, 15 F.3d 327, 330 (4th Cir. 1994)). Therefore, to recover under section 75.1-1 for a breach of contract, a plaintiff "must show 'substantial aggravating circumstances attending the breach to recover[.]'" Eastover Ridge, LLC v. Metric Constructors, Inc., 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (quoting Branch Banking & Trust, 107 N.C. App. at 62, 418 S.E.2d at 700)).

Substantial aggravating circumstances are more likely to be shown in the formation of a contract than after the formation of the contract. Heron Bay Acquisition, LLC v. United Metal Finishing, Inc., 781 S.E.2d 889, 893 (N.C. Ct. App. 2016); see generally Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

> One reason for this is that disputes concerning the circumstances of the breach are often bound up with one party's exercise of perceived rights and remedies under the contract. Even where the exercise of contractual rights is "allegedly contrary to the terms of the agreement," the legal question concerns the interpretation and application of the agreement—that is, whether the contract has been breached. Taylor v. United States, 89 F. Supp. 3d 766, 773 (E.D.N.C. 2014); see also PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Dew Elec., Inc. v. Mass Elec. Constr. Co., 3:09cv361-RJC-DCK, 2010 U.S. Dist. LEXIS 19904, at *11-12 (W.D.N.C. Mar. 5, 2010). These claims are "best resolved by simply determining whether the parties properly fulfilled their contractual duties." Heron Bay Acquisition, 781 S.E.2d at 893 (quoting Mitchell, 148 N.C. App. at 75, 557 S.E.2d at 623-24).

7

Post v. Avita Drugs, LLC, No. 17 CVS 798, 2017 WL 4582151, at *5 (N.C. Super. Ct. Oct. 11, 2017). Therefore, regardless of how "unscrupulous [the] conduct may appear[,]" "efforts to encourage" contractual performance while "planning to breach," a "refusal to otherwise meet" contractual obligations, Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10-cv-38-FL, 2011 WL 2036676, at *4 (E.D.N.C. May 22, 2011); see also Bartolomeo, 889 F.2d at 534-35 (holding that "knowingly misleading" a party that a contractual arrangement would persist was not a deceptive act), or an intentional breach of contract are not aggravating circumstances, Mitchell v. Linville, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) ("Neither an intentional breach of contract nor a breach of warranty . . . constitutes a violation of Chapter 75." (citations omitted)); Bartolomeo, 889 F.2d at 534 ("A simple breach of contract, even if intentional, does not amount to a violation of the Act; a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages.").

Allied contends Plaintiff has not alleged aggravating circumstances attendant to the alleged breach of contract sufficient for a claim under section 75-1.1 of the North Carolina General Statutes.[4] Plaintiff summarizes Allied's unfair or deceptive acts and practices in the amended complaint as Allied's "failing, without reasonable explanation, to pay [Plaintiff's] payment requests on a timely and/or complete basis, failing to pay items identified by its own consultant as undisputed, asserting meritless defenses, and forcing both Morrison Supply and [Plaintiff] to file suit to recover payment related to the Project, all while representing to federal court that it had

---

[4] The Court does not consider the matters raised in Defendant's memorandum in support of its Motion that extend beyond the scope of the pleadings. (Doc. No. 17 at 7-9; Doc. No. 17-1).

8

reasonably certain future losses in amounts very similar to [Plaintiff's] claim[.]" (Doc. No. 15 at 14; see also Doc. No. 15 at 14-15).

Such conduct, viewed in the light most favorable to Plaintiff, does not amount to substantial aggravating circumstances. Plaintiff, as previously discussed, has not alleged fraud or deception in the formation of the contract, Wells Fargo Bank, N.A. v. Corneal, 238 N.C. App. 192, 196, 767 S.E.2d 374, 378 (2014) (affirming dismissal of claim where plaintiff "did not allege that plaintiff intended to break its promise at the time that it made the promise) or fraud or deception in the performance of the contract, cf. Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 465-66 (M.D.N.C. 2003) (holding that plaintiff had shown aggravating circumstances sufficient to survive a motion for summary judgment where defendant intentionally made material misrepresentations to cover up that a breach). Contrary to Plaintiff's argument, North Carolina courts also have not recognized bad faith or the inequitable assertion of power in the breach of a contract between a surety and an obligee as an unfair or deceptive trade practice. See Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F. Supp. 2d 669, 689-90 (M.D.N.C. 2003) (holding that violations of North Carolina insurance laws by a surety cannot be the basis for an unfair or deceptive trade practices claim and that North Carolina has not recognized a bad faith cause of action against a surety). Although the North Carolina Court of Appeals has stated in dicta that "under certain circumstances, a defendant's failure to offer payment of an undisputed debt may rise to the level of an unfair and deceptive trade practice" when rejecting the assertion that "[prejudgment] interest should be tolled when a defendant offers to pay the aggrieved party undisputed portions of the alleged debt . . . [,]" Members Interior Constr. v. Leader Constr. Co., 124 N.C. App. 121, 125, 127, 476 S.E.2d 399, 403 (1996) (citing Dailey v. Integon General Insurance Corp.,

9

75 N.C. App. 387, 331 S.E.2d 148 (1985)), the case cited and relied on by the North Carolina Court of Appeals, Dailey, is factually distinct from this case. The court in Dailey held that under some circumstances North Carolina law "permits the recovery of *punitive damages* on claims for a *tortious, bad faith refusal to settle under an insurance policy*, even though, as in this instance, the refusal to settle is also a breach of contract." 75 N.C. App. 387, 395, 331 S.E.2d 148, 154 (1985) (emphasis added). Dailey involved a dispute between the insurer and the insured and involved conduct sufficient to support a tort claim for bad faith refusal to settle. Id. at 395-97, 331 S.E.2d at 154-155. In contrast, this case involves a surety and an obligee, and tort claims for bad faith refusal to settle have not been recognized in North Carolina for surety relationships, see Cincinnati Ins., 286 F.Supp.2d at 689-90; KISAQ-RQ 8A 2 JV v. Bankers Ins. Co., No. 4:15-cv-155-BO, 2016 WL 649529, at *2 (E.D.N.C. Feb. 17, 2017) (declining "to recognize a claim for bad faith by an obligee against a surety" because North Carolina has not recognize such a claim).[5] The North Carolina Court of Appeals has also emphasized the distinctions between an insurer and a surety in Henry Angelo & Sons, Inc., v. Property Development Corp., 63 N.C. App. 569, 306 S.E.2d 162 (1983). Specifically, the court stated:

> In the law, insurance and suretyship are not synonymous terms, and if any appellate court anywhere has ever so held, our research has failed to disclose it. They involve different functions, relationships, rights and obligations; and have been recognized and treated by the profession as distinctive fields of law for generations.

---

[5] Even if the Court recognized bad faith refusal to settle as a basis for a claim against a surety under Chapter 75, Plaintiff has not alleged facts to support a plausible claim for bad faith refusal to settle. A necessary element of a claim for bad faith refusal to settle is "a refusal to pay after recognition of a valid claim[.]" Lovell v. Nationwide Mutual Ins. Co., 108 N.C. App. 416, 420, 424 S.E.2d 181, 184 (1993) ("In order to recover punitive damages for the tort of an insurance company's bad faith refusal to settle, the plaintiff must prove (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct."). The consultant's determination of an undisputed claim amount and the payment of the claim in part while continuing to dispute the remainder is not a recognition of a valid claim. See New Hickory Pizza, Inc. v. TIG Ins. Co., No. 5:16-cv-00164-RLV-DSC, 2017 WL 3840278, at *29-30 (W.D.N.C. Sept. 1, 2017).

Henry Angelo & Sons, 63 N.C. App. at 574, 306 S.E.2d at 165 (citations omitted).  Given the recognized distinctions between sureties and insurers under North Carolina law and the lack of North Carolina precedent recognizing a cause of action under Chapter 75 for the conduct alleged by Plaintiff, the Court dismisses Plaintiff's claim for unfair or deceptive trade practices.  Plaintiff's allegation of an intentional breach of contract along with unscrupulous conduct does not state a claim upon which relief can be granted under section 75-1.1 of the North Carolina General Statutes.  The conduct accompanying the alleged intentional breach is not unfair, deceptive, or aggravating as a matter of law.

## V. CONCLUSION

IT IS THEREFORE ORDERED that Allied's Motion to Dismiss (Doc. No. 16) is GRANTED.  Plaintiff's Claims III, IV, and V are DISMISSED without prejudice.

IT IS SO ORDERED.

Signed: November 7, 2017

Frank D. Whitney
Chief United States District Judge